**BLAKE, County Treasurer, et al. v. YOUNG.**

No. 17864. Opinion Filed Dec. 6, 1927.

(Syllabus.)

1. **Taxation—Constitutional Provision as to Uniformity Relates to Rate of Taxes and not Valuation of Property.**

The provisions in section 5, art. 10, of the Constitution, to wit:

"Taxes shall be uniform upon the same class of subjects,"

relates to the rate of taxes imposed upon property, and means that all property of the same class shall be taxed at the same rate of taxation, and does not relate to the valuation of property, for the reason that section 8, art. 10, Id., provides and pre-

scribes a plain and simple measure by which the value of property shall be determined and at which it shall be assessed, to wit:

"All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value estimated at the price it would bring at a fair voluntary sale."

**2. Same—Remedies of Taxpayer Aggrieved at Assessment—Resort to Equalization Board and Appeal Therefrom.**

Section 9966, Comp. St. 1921, provides a simple and adequate remedy by which a taxpayer aggrieved at his assessment may have same corrected and adjusted, and prescribes the procedure by which relief may be obtained, viz., by resort to the board of equalization, and appeal therefrom if dissatisfied.

And section 9969, Id., provides that:

"The remedies of resort to the boards and appeal therefrom shall be the sole remedies for the correction of assessment or equalization."

**3. Same—Relief from Illegal Tax—Exclusive Remedy by Payment Under Protest and Suit to Recover Illegal Tax Paid.**

Section 9971, Comp. St. 1921, provides a complete and adequate remedy by which persons may obtain relief from an illegal tax, viz., by payment of the taxes at or before the time they fall due and by bringing an action as prescribed in said section to recover the illegal taxes thus paid, and the remedy thus provided is exclusive.

**4. Same—Laches of Taxpayer in Pursuing Statutory Remedies—Injunctive Relief and Reassessment Denied.**

Where a taxpayer has personally rendered his property for assessment and voluntarily valued his property at a given figure, and allows his taxes to become delinquent for a period of five years without applying to the board of equalization, as prescribed in section 9966 for a correction of assessments, and without availing himself of the remedies prescribed in section 9971 for relief from an alleged illegal tax, he will not in such case be granted injunctive relief against the collection of such taxes, nor granted relief by an order canceling the assessment rolls and ordering a reassessment.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by John W. Young, doing business under trade name of Sapulpa Herald, against Ralph H. Blake, County Treasurer of Creek County, and others. Judgment for plaintiff, and defendants bring error. Reversed and rendered.

W. F. Pardoe, Co. Atty., L. J. Burt, Asst. Co. Atty., Lloyd J. Seay, and Wayne H Lasater, for plaintiffs in error.

Roy T. Wildman, for defendant in error.

HARRISON, J. This action was filed in the district court of Creek county, November 28, 1925, by John W. Young, owner and publisher of the Sapulpa Herald, a newspaper, against the county treasurer of Creek county, the sheriff, collector of delinquent personal taxes, and the assessor of said county, alleging that his property for the fiscal years 1920, 1921, 1922, 1923, and 1924 had been valued and assessed at $10,000 for each of said years, when in truth and in fact its fair cash value was not more than $5 000 during any year of said period, and praying that his property be reassessed at its fair cash value for said years, and for such other relief as the court might find him entitled to receive. The property in question consisted of the said Sapulpa Herald printing plant and fixtures.

The defendants answered, alleging that plaintiff had personally rendered his property to the assessor for each of said years, and each year had himself voluntarily valued it at $10,000; that the assessor had assessed it only at the value which plaintiff had voluntarily placed upon it, and denying that he had ever applied to the board of equalization for a reduction or adjustment of his assessment, or appealed from the action of the board of equalization, as prescribed by law, or in any manner called the county authorities' attention to his claim that his property had been valued and assessed too high.

A jury was waived and upon the testimony introduced the court made a special finding of facts and rendered judgment in favor of the plaintiff, holding that said assessed valuation of $10,000 was illegal and void and not authorized by law, and ordering that said assessment be canceled and set aside and further ordered, to wit:

"It is further ordered by the court that the proper and legal officers and authorities of Creek county, Okla., assess said mentioned and described property for each of said years * * *. for proper and legal taxation purposes as provided by law."

Defendants appeal from said judgment to this court, contending that, inasmuch as plaintiff had each year voluntarily valued his property at $10,000 and had made no application, nor attempt at any time to have his assessment reduced, as provided in section 9966, C. O. S. 1921, nor appealed as prescribed by said statute, and as he had at no time called it to the attention of the officers that his property had been assessed too high, and as he had allowed his taxes

to become delinquent for eacn of said years without payment of any portion thereof and bringing suit for recovery as provided in section 9971, C. S. 1921, that he was now foreclosed of his right to relief. Citing, also, a text from Cooley on Taxation, vol. 3 (4th Ed.) p. 2422 sec. 1208, to wit:

"Mere irregularities or overvaluation are waived where the taxpayer fails to avail himself in due time of the remedies given to him by appeal to a board or officer."

In support of which text the author cites decisions from the Supreme Courts of Indiana, Minnesota, Nebraska, Massachusetts and New York; and citing the further text, to wit:

"An assessment cannot be attacked in respect to a matter based on the return of the taxpayer, and one who misleads the assessing board cannot complain."

Also citing the following text from 10 R. C. L. p. 721, sec. 44, topic, "Estoppel," to wit:

"A taxpayer is generally held to be estopped from claiming that an assessment is void or defective when it appears that the assessment was based on a statement or return made by him to the assessor."

Defendant in error in answering the argument of plaintiffs in error calls attention to section 5, art. 10, of the Constitution, which provides:

"Taxes shall be uniform upon the same class of subjects."

And to section 8, art. 10, of the Constitution which provides that:

"All property which may be taxed ad valorem shall be assessed at its fair cash value"

—and contending that the property in ques tion was not assessed at its fair cash value, but was assessed upon a discriminatory and confiscatory value, and cites a number of authorities which hold that under a similar constitutional provision taxation must be uniform upon the same class of subjects, and that discriminatory valuations are violative of such constitutional provisions, and that assessments made in such manner will be set aside. Also citing some authorities from this and other courts holding that the collection of taxes levied upon such discriminatory assessments will be set aside.

As to the provision in section 5 art. 10, of the Constitution, that taxes shall be uniform upon the same class of subjects, this provision quite obviously relates to the rate of taxation and means that all property of the same class shall be taxed at the same

rate of taxation, for section 8 of said article 10 provides and prescribes a plain, simple measure by which the value of property shall be determined and at which it shall be assessed, to wit:

"All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale."

As to the contention that the assessment was discriminatory, the undisputed evidence is that plaintiff voluntarily listed his property at $10,000, that he voluntarily placed this value upon his property and that the assessor, without questioning the truth of plaintiff's valuation, assessed his property at the value fixed by plaintiff.

There was no influence brought to bear upon plaintiff, no arbitrary assessment made, but the assessor, relying upon the valuation placed by plaintiff himself upon his property, assessed same at the value which plaintiff voluntarily gave. There was no discrimination, certainly no intention to discriminate, nor evidence of intentional discrimination. The fact that other printing plants of the same character and same actual value had been rendered at a lower figure by other publishers did not cast any blame upon the assessor, nor upon the board of equalization, which merely approved the assessment rolls turned in by the assessor without raising or lowering any of the values therein placed. Hence, the decisions cited as bearing upon discriminatory valuations are not applicable in this case.

The evidence, it is true, is conclusive, at least it is not disputed, that two other printing plants in the county of the same kind and equally as good as plaintiff's were valued at from $3,000 to $4,000 during the aforesaid period of years, but the evidence conclusively shows also that each of the owners of said other printing plants had themselves placed the value upon their property and the assessor merely took it as correct and that plaintiff herein voluntarily placed the value upon his property and the assessor took it as correct, and the board of equalization made no change in any of the assessments, was not asked to make any change in any assessment, and therefore approved the rolls as turned in by the assessor.

There was evidence that the board of equalization did not function during these years, that it held no meetings and did no more than merely to approve the assessment rolls without changing the valuation of any

property, and plaintiff testified that he at one time made an attempt to have his assessment reduced, but that the board was not in session and he could not get before it. But, aside from the fact that such an attempt would apply only to the assessment for the year in which the attempt was made, it is confessed that no application was ever filed with the board asking for a reduction or re-adjustment for any of the aforesaid years.

Section 9966, C. S. 1921, provides the plain, simple, and adequate remedy by which any taxpayer aggrieved at his assessment may apply to the county board of equalization for the relief he thinks himself entitled to, and if not satisfied with the action of the board, may appeal to the district court.

Section 9966 provides the manner of appeal and prescribes what shall constitute an appeal. And section 9969 being a part of the same act, provides:

"This act shall be construed to give remedies and rights in addition to those of appeal heretofore given by statute, but the remedies of resort to the boards and appeal therefrom shall be the sole remedies for the correction of assessment or equalization."

Section 9971 provides a complete remedy for persons claiming to have been illegally taxed, by payment of the taxes due at or before the time they fall due, and by an action to recover same because of their illegality, within the time and in the manner prescribed by said section. And this court in A., T. & S. F. Ry. Co. v. Eldredge, 65 Okla. 317, 166 Pac. 1085, held that the remedy prescribed in said section 9971 was exclusive, and that injunctive relief would not lie to prevent the collection of the alleged illegal tax. See, also, Black v. Geissler, 58 Okla. 335, 159 Pac. 1124; Fast v. Rogers, 30 Okla. 289, 119 Pac. 241; Huber v. Akers, 66 Okla. 11, 166 Pac. 892; Going v. Treas., Carter Co., 88 Okla. 222, 214 Pac. 922.

It may be true, and, from the testimony of plaintiff himself, we are inclined to think it was true, that he made an honest mistake of fact and valued his property higher than other property of like character was valued by other publishers. Frankly we feel that he told the exact truth about the facts, but the truth is that if any mistake was made, it was unfortunately for him made by plaintiff himself, in his own voluntary valuation, and under the circumstances of this case, the foregoing statutes and decisions construing same we feel that the court is bound to deny relief at this time. And, as there is no dispute as to the decisive facts in the case, and no even slightly apparent reason for another trial, the judgment of the trial court is reversed and judgment here rendered in favor of plaintiffs in error, defendants in the lower court.

Reversed.

All the Justices concur.